UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPHINE R. BURKHARDT,<br>*Plaintiff*,<br><br>v.<br><br>TIFFIN MOTORHOMES, INC.,<br>*Defendant.* | Civil No.: 23-21854 (KSH) (CLW)<br><br><br><u>OPINION</u> |

**I.     Introduction**

This action concerns plaintiff Josephine R. Burkhardt's purportedly defective motorhome, which was manufactured by defendant Tiffin Motorhomes, Inc. Burkhardt has asserted statutory warranty and related claims against Tiffin, which has moved to transfer this case to the Northern District of Alabama. For the reasons set forth below, the motion will be granted.

**II.    Background**

The complaint alleges that on May 27, 2021, Burkhardt, a New Jersey resident, took possession of a new Wayfarer 25 RW motorhome, which was manufactured by Alabama-based Tiffin. (D.E. 1-3, Compl. ¶¶ 1-4.) Where that transaction happened is not identified in the complaint, although a purchase agreement from an Alabama dealership is attached to it. (Compl., Ex. A.)

As part of the transaction, which the complaint describes inconsistently as either a lease or a purchase, Tiffin "issued to plaintiff several warranties, guarantees, affirmations or undertakings with respect to the material or workmanship of the vehicle and/or remedial action in the event the vehicle fails to meet the promised specifications." (*Id.* ¶ 6.) Within the warranty period, Burkhardt complained about problems with the motorhome, specifically that the

"entrance stairs deploy automatically at inappropriate times," and that there were "electrical issues." (*Id.* ¶ 10.) "[I]neffective repair attempts" were made "by Defendant through its authorized dealer(s)," but the problems persisted, rendering the motorhome "substantially impaired, unable to be utilized for its intended purposes," and "worthless to Plaintiff." (*Id.* ¶¶ 9, 11.)

On October 3, 2023, Burkhardt sued Tiffin in Union County Superior Court, and a month later Tiffin removed the action to this court. (D.E. 1, Notice of Removal.) Burkhardt brought claims under the New Jersey Motor Vehicle Warranty Act, N.J.S.A. 56:12-29 *et seq.* and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (count I), the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (count II); and the Uniform Commercial Code (count III). Tiffin filed its answer and affirmative defenses to the complaint on November 27, 2023. (D.E. 5.)

On November 16, 2023, Tiffin filed the instant motion to transfer venue to the Northern District of Alabama under 28 U.S.C. § 1404(a). (D.E. 4.) The motion was based on a limited warranty (the "warranty") that Tiffin provided to Burkhardt as the first purchaser of the motorhome. Tiffin alleges the warranty was registered at the time of purchase. The warranty contains the following forum selection clause:

> PURCHASER AND TIFFIN AGREE THAT EXCLUSIVE JURISDICTION OF ANY PROCEEDING HEREUNDER SHALL BE IN THE STATE COURT OF GENERAL JURISDICTION IN AND FOR FRANKLIN COUNTY, ALABAMA, OR IN THE FEDERAL DISTRICT COURT DIVISION THAT INCLUDES FRANKLIN COUNTY, ALABAMA.  PURCHASER AND TIFFIN AGREE TO SUBMIT THEMSELVES, IN ANY LEGAL ACTION OR PROCEEDING BETWEEN THEM RELATING TO THIS LIMITED WARRANTY OR OTHERWISE TO THE STATE OR FEDERAL COURT FOR FRANKLIN COUNTY, ALABAMA, AND CONSENT THAT ANY ACTION OR PROCEEDING SHALL BE BROUGHT IN SUCH COURTS, AND HEREBY WAIVE ANY OBJECTION THAT EACH MAY NOW OR

>   HEREAFTER HAVE TO THE VENUE OF ANY ACTION OR PROCEEDING IN ANY SUCH COURT.

(D.E. 4-3, Ex. C to Moving Br., at ¶ 9.)

In seeking transfer, Tiffin argues that this clause is presumptively valid and enforceable; that Burkhardt, having not shown it is unreasonable, should be held to the terms of the parties' bargain; and that the public interest factors of a venue-transfer analysis favor transfer. There is also attached to Tiffin's motion a warranty registration form (the "registration form"), which states that "By signing this form as Owner of a Tiffin motorhome, I ACKNOWLEDGE THAT I HAVE READ THE TIFFIN LIMITED WARRANTY, INCLUDING THE ARBITRATION AGREEMENT, AND I UNDERSTAND ITS PROVISIONS AND AGREE TO BE BOUND BY ITS TERMS."  (D.E. 4-4, Ex. D to Moving Br.)  Below that language is a line for "OWNER'S SIGNATURE" and a signature, dated May 27, 2021.

In opposition, Burkhardt does not deny signing the registration form, but claims she was not shown the warranty itself; this, she contends, means that it is up to Tiffin to prove that the forum selection clause in the warranty is enforceable, which it hasn't done.  (*See generally* D.E. 6, Pl. Opp.)  She further asserts that the forum selection clause is unconscionable and against public policy because she would allegedly lose various rights under New Jersey law—an argument she has based primarily on a choice of law clause that does not appear in the warranty and for which no citation is provided.  (*Compare* D.E. 6, Pl. Opp. at 4 *with* D.E. 4, Ex. C, Warranty.)[1]

Tiffin, in reply, asserts that Burkhardt failed to address the factors relevant to a transfer venue analysis, and has not shown the clause is unreasonable. Tiffin also argues Burkhardt is

---

[1] Page references in Burkhardt's opposition are to the page numbers assigned by the CM/ECF system.

estopped from denying receipt of the warranty when she has filed an action for breach of that warranty. (D.E. 7, Reply Br.)

In reviewing the motion papers, the Court found both sides' briefing left central issues unclear. For example, Tiffin characterized the transaction as a purchase that took place in Alabama and repeatedly argued that an Alabama choice-of-law provision applied, despite no such language appearing in the warranty's forum selection clause (or elsewhere in the warranty).[2] Burkhardt's arguments also assumed an Alabama choice of law, and left muddled the circumstances of the transaction.

The Court held oral argument on the motion, and sought to have the parties clarify the inconsistencies and gaps in the record. Burkhardt's attorney reiterated the public policy argument – in effect, that transfer would result in a waiver of Burkhardt's rights because Alabama law would apply. Significantly, he disclosed new information: that Burkhardt received the motorhome as part of the resolution of an earlier warranty lawsuit she filed through the same law firm with respect to a different motorhome. He also argued why the interest factors in the transfer-venue analysis warranted denying transfer, which plaintiff's opposition had not addressed.

In presenting Tiffin's side, its attorney initially stuck to the argument that an Alabama choice-of-law provision governed, although he could not point to where in the warranty such language appears. He switched gears when the Court explored Burkhardt's public policy

---

[2] *See* Moving Br. 5 ("Plaintiff received the benefit of the purchase by voluntarily contracting with Tiffin outside the confines of New Jersey and specifically in Alabama. Plaintiff should also be bound to accept the burdens of the forum selection clause. As Alabama law will also apply to Plaintiff's Complaint, breach of warranty and Magnuson Moss claims, the Alabama venue is better suited to apply its own case law." (internal citation omitted)); *id.* at 7 (requesting "enforce[ment of] the applicable law and venue clause in the Purchase Agreement").

4

arguments, specifically the anti-waiver provision of the New Jersey Motor Vehicle Warranty Act, N.J.S.A. 56:12-48.  In response, counsel argued that the "very simple solution is that Tiffin would not bar the plaintiff from asserting those consumer fraud actions under New Jersey law in the Alabama court. And then the plaintiff has their recourse under the state statute."[3]  Asked whether that stance meant the New Jersey "lemon law" (*i.e.*, the New Jersey Motor Vehicle Warranty Act) and New Jersey Consumer Fraud Act would apply in an Alabama court, Tiffin's attorney answered that the Northern District of Alabama would be competent to apply "any New Jersey law that may apply to the underlying transaction at the appropriate time presumptively at a dispositive motion or at the trial time."

At the conclusion of oral argument, the Court ordered supplemental submissions so the record could properly reflect the matters the parties sought to introduce via lawyer argument. (*See* D.E. 13.)  In response, Burkhardt offered a three-page "Statement of Plaintiff's Position" arguing that the purchase transaction took place in New Jersey, that she had not gone to Alabama for it, and that the public interest factors in the transfer-venue analysis disfavor transfer here. (D.E. 14.)  Attached was an "Affidavit in Regards to Location of Purchase" signed by Burkhardt, which states that she originally bought a Tiffin vehicle in New Jersey; had to "file a lemon law" through her current attorneys; and "regarding it a settlement was reached" with Tiffin that "provided for a new unit."  However, she continued, "everything is tied into the original purchase of a unit in New Jersey" and she has "never been to Alabama to purchase this vehicle, or any vehicle, but was provided this vehicle in response to my New Jersey purchase."[4]

---

[3] From the argument, the Court understands that Tiffin did not agree that New Jersey law necessarily provides a remedy to Burkhardt under the circumstances; in other words, it did not concede the merit of her claims, only that New Jersey law would be applicable to that question.
[4] In arguing why several of the public interest factors favor denying transfer, Burkhardt's supplemental submission cited an "Exhibit D" comprised of repair orders that would purportedly

Tiffin's supplemental submission noted that Burkhardt's affidavit did not address where she took possession of the motorhome at issue in this action (versus the motorhome that was the subject of the prior case). (D.E. 17.) It also submitted a copy of the settlement agreement that purportedly resolved Burkhardt's earlier lawsuit, which deems the location of the sale of the current motorhome to be Alabama, chooses Alabama law to "govern[]" the "transaction," and chooses New Jersey law to govern the settlement agreement, "except as to any disputes regarding the purchase, delivery and warranty of the New Vehicle, which shall be governed by the laws of the State of Alabama." (*See id.* at 2-3; *see also* Ex. A, Settlement Agreement & Release at 2.) The agreement also includes the parties' "consent to the jurisdiction of the State and Federal Courts of the States of New Jersey and/or Alabama." (Ex. A at 2.)[5]

Despite this agreement's selection of Alabama law for certain aspects of the motorhome transaction, Tiffin reiterated its position at oral argument that Burkhardt could pursue her New Jersey Consumer Fraud Act "claims" (a reference the Court interprets as applying both to the New Jersey Consumer Fraud Act and the New Jersey Motor Vehicle Warranty Act, consistent with counsel's representations at argument) upon transfer to the Northern District of Alabama. (D.E. 17, at 3.)

### III.   Standard of Review

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

show that "all necessary testimony in this case will come from either Plaintiff . . . or from the technicians who worked" on the motorhome. (D.E. 14, at 2.) No Exhibit D was attached, and when the Court directed plaintiff to file the referenced exhibit, plaintiff responded that "there is no 'Exhibit D'" and that the reference was an "oversight" to be "disregard[ed]." (D.E. 16.)

[5] To the extent Tiffin appears to question the disparity in signatures among various documents (D.E. 17, at 2 n.1), Burkhardt has not denied signing any of these documents, including the registration form that is now being enforced against her.

6

where it might have been brought or to any district or division to which all parties have consented." Here there is no dispute that the suit "might have been brought" in the Northern District of Alabama; it is the statute's remaining requirements that are at stake here. That is, courts evaluating motions to transfer venue under § 1404(a) look to "the three enumerated [factors] under the statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors, including the plaintiff's choice of forum and the local interest in deciding local controversies at home." *In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018).

These factors are typically sorted into two categories: private interest factors, which "relate to 'the convenience of the parties and witnesses,'" and public interest factors, which "are not necessarily tied to the parties, but instead derive from 'the interest of justice.'" *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (citing 28 U.S.C. § 1404(a)).

The private interest factors are:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses; and [6] the location of books and records . . . as well as [7] all other practical problems that make trial of a case easy, expeditious and inexpensive . . . .

*Id.* at 402 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), and *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 & n.6 (2013) (internal quotation marks omitted)). The public interest factors include:

> [1] the enforceability of the judgment; [2] the relative administrative difficulty in the two fora resulting from court congestion; [3] the local interest in deciding local controversies at home; [4] the public policies of the fora; and [5] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (cleaned up). "[P]ractical considerations that could make the trial easy, expeditious, or inexpensive" may also be relevant in this analysis. *Jumara*, 55 F.3d at 879. These factors are all weighed to determine whether, on balance, "the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *McGraw-Hill*, 909 F.3d at 57.

The analysis changes when a valid forum selection clause applies. The plaintiff's choice of forum is not given any weight; the private interest factors are not analyzed and are instead deemed to favor the venue specified in the clause; and only the public interest factors are to be considered—though they will "rarely" defeat a motion to transfer venue. *Atl. Marine*, 571 U.S. at 63-64. *See also Howmedica*, 867 F.3d at 397.[6] The "practical result" of this adjusted analysis is that "forum selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 65.

Which of these two avenues of analysis applies depends on whether a valid forum selection clause governs, itself a two-part question: whether the clause is enforceable, and whether the dispute is within its scope. *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 97 (3d Cir. 2018). Here, scope is not at issue: neither side argues that the warranty's forum selection clause does not cover the dispute. Burkhardt's argument is about the clause's enforceability.

---

[6] On page 3 of Tiffin's moving brief, it discusses an additional four-part test found in *Howmedica*. (D.E. 4, at 3.) That test was created to "determine how forum-selection clauses affect the § 1404(a) transfer analysis where *both contracting and non-contracting parties are found in the same case* and where the non-contracting parties' private interests run headlong into the presumption of *Atlantic Marine*" (*i.e.*, that forum-selection clauses should usually be enforced). *Howmedica*, 867 F.3d at 403. This case does not involve contracting *and* non-contracting parties.

8

To challenge the "presumptive validity" of an applicable forum selection clause, a party seeking to proceed in a forum contrary to the contractually selected one must make a "strong showing that the clause is unreasonable." *Peck v. Jayco, Inc.*, 665 F. Supp. 3d 607, 613 (D.N.J. 2023) (Kugler, J.) (cleaned up). To establish unreasonableness, the party must establish that the clause (i) "is the result of fraud or overreaching," (ii) "that enforcement would violate a strong public policy of the forum," or (iii) "that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Id.* (cleaned up).

## IV. Discussion

The Tiffin limited warranty that Burkhardt seeks to enforce in pursuing her affirmative claims selects state court in Franklin County, Alabama, or the federal district court encompassing that Alabama county, as the exclusive venue for proceedings under the warranty. (D.E. 4, Moving Br., Ex. C.) Burkhardt signed a warranty registration form "ACKNOWLEDG[ING] THAT [SHE] HAD READ THE TIFFIN LIMITED WARRANTY, INCLUDING THE ARBITRATION AGREEMENT," and that she "UNDERSTAND[S] ITS PROVISIONS AND AGREE[S] TO BE BOUND BY ITS TERMS." (*Id.*, Ex. D.) She does not claim that this version of the warranty is inapplicable, or that she didn't sign the warranty registration form with that language in it. Instead, she argues she shouldn't be held to the forum selection part of the bargain because it is unenforceable. It is therefore her burden to "make a strong showing that the clause is unreasonable." *Peck*, 665 F. Supp. 3d at 613.[7] If she does make that showing, the full

---

[7] Burkhardt's attempt to shift the burden to Tiffin relies on California law, which it analogizes to New Jersey law (D.E. 6, at 1-2), but it is well established that the enforceability (as opposed to the scope or interpretation) of a forum selection clause is a matter of federal law. *McGraw-Hill*, 909 F.3d at 58. Burkhardt's citation to a flurry of orders from various other jurisdictions is similarly unhelpful to the specific analysis this Court must conduct, as set forth herein.

9

interests analysis – public and private interest factors – applies.  If she doesn't, the forum selection clause requires transfer unless this is the "unusual" case where the public interest factors alone overcome the forum chosen by contract.

Burkhardt does not contend that the forum selection clause is the product of fraud, and although she argues the selected forum would be inconvenient, she neither asserts nor provides any evidentiary support for the notion that litigation in the Northern District of Alabama would be "so seriously inconvenient as to be unreasonable," *Peck*, 665 F. Supp. 3d at 613, a demanding standard only met when the evidence shows an inconvenience of such magnitude that the party is effectively deprived of her day in court.  *See, e.g.*, *Heartland Payment Sys., Inc. v. Steves*, 2015 WL 7737344, at *3 (D.N.J. Dec. 1, 2015) (Chesler, J.) (applying this standard to reject challenge to forum selection clause).

To the extent Burkhardt argues that the clause is unconscionable because it is part of a contract of adhesion, forum selection clauses routinely withstand such challenges.  *Heartland*, 2015 WL 7737344, at *3 ("Forum selection clauses are routinely upheld, even in situations involving adhesion contracts, unequal bargaining power, and the absence of negotiations over the clause." (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594-95 (1991)). To the extent she contends (in briefing, but not in her affidavit) that the clause is unconscionable because she "never saw" the warranty in which it is found (D.E. 6, at 6), the registration form that she does not deny signing includes an express acknowledgment that she read the warranty.  Her failure to actually do so does not mean its terms, including the forum selection clause, cannot be enforced against her.  *D'Ambola v. Daily Harvest, Inc.*, 2023 WL 3720888, at *4 (D.N.J. May 30, 2023) (Padin, J.) ("A failure to read the terms and conditions, and specifically, the forum selection clause, does not render the forum selection clause invalid or diminish its force and effect."

(quoting *Home Source Indus., LLC v. Freightquote.com, Inc.*, 2014 WL 6609051, at *5 (D.N.J. Nov. 19, 2014)).  Burkhardt's own submissions, moreover, show that she was represented by counsel throughout the transaction—and indeed, that her acquisition of the subject motorhome was a negotiated resolution to an earlier lawsuit.

The centerpiece of Burkhardt's argument against enforcement of the forum selection clause is public policy.  She contends that if the clause is enforced, she will lose the greater protections afforded to her by New Jersey law, including a longer statute of limitations and more expansive substantive law.  (D.E. 6, Pl. Opp. 5-6.)  The necessary predicate of this argument is that Alabama law will displace New Jersey law in the transferee court, but Burkhardt has not cogently articulated why that would be the case.  Indeed, at oral argument the Court expressly probed the basis of the parties' apparent mutual belief that Alabama law would apply, and the result was a concession from Tiffin that New Jersey law would still apply in the event of transfer.  Tiffin stuck to that concession in its supplemental submission, even in the face of a separate agreement it attached that purported to apply Alabama law to warranty issues arising from the transaction.

Alabama choice-of-law rules (which, under *Atlantic Marine*, 571 U.S. at 64, would govern in the event this Court enforces the forum selection clause and transfers the case to the Northern District of Alabama) call for a far more robust analysis than either side has offered here.  *See, e.g.*, *Thakkar v. ProctorU, Inc.*, 642 F. Supp. 3d 1304 (N.D. Ala. 2022); *DJR Associates, LLC v. Hammonds*, 241 F. Supp. 3d 1208 (N.D. Ala. 2017).  As such, the present record does not permit the Court to determine whether Tiffin's concession displaces the settlement agreement's choice of law clause and functions as a new contractual agreement to apply New Jersey law that would be enforceable under Alabama choice-of-law rules.

11

But as a procedural matter, that concession operates to achieve the same result: that New Jersey law will apply in the Northern District of Alabama as the transferee court, thereby allaying Burkhardt's public policy-based concern that her substantive rights will be limited or lost by virtue of transfer. Effectively, Tiffin's concession that it will not invoke Alabama law against Burkhardt's claims functions a waiver of the right it may otherwise have to invoke that law. *See, e.g.*, *Goodnight v. Boston Scientific Corp.*, 548 F. Supp. 3d 1325, 1335-36 (S.D. Fla. 2020) ("[I]t's well-settled in this and other circuits that, just as a party may stipulate to the application of a state's legal regime, a party may, through its briefing (or otherwise), waive its choice-of-law arguments implicitly . . . . In other words, in our adversarial system, a straightforward application of the waiver doctrine (or, as the case may be, a stipulation) sometimes determines what the 'correct law' is." (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d 425,426-27 (7th Cir. 1991), which states that "whether to honor a choice of law stipulation . . . is a pure question of procedure" and that courts "do not worry about conflict of laws unless the parties disagree on which state's law applies" (internal quotation marks omitted)); *accord Bahama Sales Associate, LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) ("If the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies."); *see also Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1209 (11th Cir. 2018) (concluding that plaintiff waived opportunity to rely on non-forum law by failing to proffer information necessary for district court to conduct choice-of-law analysis).

Indeed, it appears the Eleventh Circuit and the Northern District of Alabama regularly apply the law briefed by the parties without engaging in a *sua sponte* choice of law analysis, including where the parties apply New Jersey law. *See Ryder Commc'ns, Inc. v. Am. Tel. & Tel.,*

*Inc.*, 156 F. App'x 292, 293 (11th Cir. 2005) (per curiam) (applying New Jersey law in determining whether a contractual provision was enforceable because "the parties agree that New Jersey law applies"); *Fireman's Fund Ins. Co. v. Kettleman*, 248 F. App'x 126, 127 (11th Cir. 2007) (per curiam) ("The parties agree that New Jersey law applies to their dispute."); *Abbott Point of Care, Inc. v. Epocal, Inc.*, 2012 WL 13162732, at *7 (N.D. Ala. Apr. 18, 2012) (applying New Jersey law to tortious interference claim where parties agreed that was the applicable law).

For the Court to conclude that the forum selection clause in the warranty is unenforceable, Burkhardt had to establish that enforcing it would violate a strong public policy of New Jersey. Her premise, that she would be deprived of the benefits of New Jersey's apparently more expansive consumer-protective warranty and consumer fraud statutes in the event of transfer, does not hold up. Accordingly, she has not carried her burden.

That leaves only the public interest factors to be weighed, and this is not the rare or exceptional case where those factors override the contractual selection. *Atl. Marine*, 571 U.S. at 62 (where a forum selection clause applies, "[o]nly under *extraordinary circumstances unrelated to the convenience of the parties* should a § 1404(a) motion be denied" (emphasis added)). The first factor is neutral or slightly favors transfer; there is no difference in the enforceability of a judgment issued by a federal district court in New Jersey versus in Alabama. *Howmedica*, 867 F.3d at 406 n.10 (enforceability factor considers "whether a judgment is *capable* of being enforced at all," rather than the convenience with which a party may obtain the judgment); *id.* at 410 (calling it "unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or another" (cleaned up)).

The second factor favors transfer; with respect to relative court congestion, the Northern District of Alabama has a far smaller number of pending cases than this district does. (*See* U.S. District Courts, Civil Federal Judicial Caseload Statistics, Table C-1 (March 31, 2024), https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2024/03/31). The third factor is effectively neutral; although plaintiff is a New Jersey resident, the fuller record before the Court following the parties' supplemental submissions indicates that stakeholders in both New Jersey and Alabama have an interest in resolving this matter in their respective locales, and that this is not purely, or even primarily, a "local" New Jersey case. The New Jersey stakeholder, Burkhardt, was also represented by counsel when she signed agreements reflecting Alabama's interest in this matter.

The fourth factor favors transfer; as discussed above, New Jersey's interests in protecting consumers are preserved under the circumstances here, where the defendant has conceded that its law will apply upon transfer. Moreover, New Jersey's public policy also favors enforcement of forum selection clauses. *Groeneveld v. Verb Technology Co.*, 2024 WL 1253296, at *5 (D.N.J. Mar. 25, 2024) (Castner, J.). The fifth factor only slightly disfavors transfer; although a district judge sitting in New Jersey may be more familiar with applying New Jersey law, district judges sitting in diversity are routinely called upon to apply the law of many different jurisdictions.

To the extent Burkhardt's supplemental submission referenced other practical considerations related to efficiency (D.E. 14, at 2), she references the inconvenience of transfer to herself (which is a private, not public, interest factor) and to unidentified service technicians who purportedly worked on the motorhome in New Jersey; as noted *supra*, however, she later said it was an "oversight" to have referred to repair orders that would have substantiated this

14

information. And as Tiffin has noted, the ubiquity of electronic discovery and platforms for remote testimony counterbalances such considerations. *Accord Peck*, 665 F. Supp. 3d at 615.

On balance, the facts of this case do not make out the sort of exceptional circumstances that *Atlantic Marine* requires for a court to override the forum selection clause.

## V.     Conclusion

Tiffin's motion to transfer venue will be granted. An appropriate order will follow.

Date: December 10, 2024

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.