FILED
2026 Oct-21 PM 12:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

| | | |
|---|---|---|
| **JOSEPHINE BURKHARDT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **6:24-cv-1707-EGL** |
| | ) | |
| **TIFFIN MOTORHOMES INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION & ORDER

On October 12, 2023, Josephine Burkhardt sued Tiffin Motorhomes, Inc. in the Superior Court of New Jersey. *See* Doc. 1-3. Tiffin removed the case to the United States District Court for the District of New Jersey on November 3, 2023. *See* Doc. 1. On December 10, 2024, the action was transferred to this Court. *See* Docs. 19, 20. On May 29, 2026, Tiffin moved for summary judgment. *See* Doc. 54. For the reasons below, the motion is **GRANTED**.

## BACKGROUND

Burkhardt purchased a 2020 Wayfarer 25 RW RV manufactured by Tiffin from Scott RV in New Jersey. Doc. 53-1 at 5–6.; Doc. 53-2. She afterwards began complaining of defects and nonconformities with the RV and ultimately reached a settlement agreement with Tiffin. Doc. 53-1 at 11–12; Doc. 53-2. Under the terms of that agreement, Tiffin agreed to pay her $132,851.00 for the repurchase of the original RV, and she agreed "to purchase from Tiffin and/or its agent or dealer, a

new 2021 Wayfarer 25 RW to be manufactured by Tiffin" for her. *Id.* at 2. The sale price of that vehicle was $125,500.00, plus sales taxes and governmental licensing and fees. *Id.* On May 12, 2021, Tiffin sold the RV to Bankston Motor Homes, Inc., in Huntsville, Alabama. Doc. 53-3. Burkhardt traveled from New Jersey to Huntsville to purchase the RV from Bankston in accordance with the terms of the settlement agreement. Doc. 53-1 at 4. On May 27, 2021, she purchased the RV from Bankston for $125,500. *Id.*; Doc. 53-4 at 1.

The purchase agreement for the new RV included a warranty that obligated Tiffin to repair or replace any defects in materials or workmanship to the covered portion of the motorhome that were defective at the time of purchase, or which became defective during normal use during the warranty period. Doc. 53-5 at 4. The warranty period was for one year from the date Burkhardt took possession of the RV or until it had been driven 12,000 miles, whichever occurred first. *Id.* at 4–5. The Limited Warranty applied only to items and parts manufactured by Tiffin, and did not apply to tires, wheels, the engine, appliances, television, VCS, DVD, stereo surround system, satellite TV system, the generator, batteries, or routine maintenance items. *Id.* at 5–6. And the Limited Warranty did not cover adjustments to items such as the slide-outs, entry doors, storage bay doors, cabinet doors, shelving, or interior doors. *Id.* at 8. In addition, the Limited Warranty expressly disclaimed all other warranties, whether they be express, implied or "those that

might arise from course of dealing or custom of trade, and including all implied warranties of merchantability and fitness for a particular purpose." *Id.* at 8–9.

Burkhardt signed a purchase agreement with Bankston RV. Doc. 53-4. A provision of this purchase agreement provided that Burkhardt acknowledged "that all written warranties have been made available to me prior to purchase if required by me." *Id.* at 2. Additionally, and on the same day she purchased the RV, Burkhardt completed the Warranty Registration Form, which included an acknowledgement that she had read the Tiffin Limited Warranty and understood its provisions and agreed to be bound by its terms. Doc. 53-6; *see also* Doc. 53-1 at 8.

After taking possession of the RV, Burkhardt reported issues with it to Tiffin including that (1) the coach leaked, (2) a panel was buckling, (3) the slide made a grinding noise when she tried to operate it, (4) the door to the coach was misaligned, and (5) trim near the bathroom was missing. Doc. 53-1 at 11–12. Tiffin sent one of its employees, Matt Fullard, to Burkhardt's home to attempt to repair or fix these issues on June 15 and 16, 2021. *Id.* at 11. After the repair attempts on these issues, Burkhardt made additional complaints to Tiffin about the RV, now claiming that it had interior electrical issues. *Id.* at 16. Tiffin then sought to have the RV returned to Alabama for repair at its facility. *Id.* Tiffin eventually picked up the RV and transported it to Alabama on October 31, 2022. *Id.* At this point, the Limited

Warranty was no longer in effect, as it had been one year from the date of purchase. *See* Doc. 53-5 at 4–5.

On December 29, 2022, the RV was returned to Burkhardt in New Jersey. Doc. 53-1 at 28. Upon its return, Burkhardt complained that the entry stairs to the RV were not fixed and because of that she did not attempt to use any other feature. *Id.* at 17–18. Since that date, she has not driven or attempted to drive the RV. *Id.* at 20. But on May 2, 2026, her son-in-law picked up the RV from a Mercedes-Benz dealership and returned it to her home. *Id.*

Burkhardt filed suit against Tiffin on October 12, 2023, in the Superior Court of New Jersey. Doc. 1-3 at 2. Tiffin removed the action to the United States District Court for the District of New Jersey on November 3, 2023. Doc. 1. On November 16, 2023, Tiffin filed a motion to transfer the case to the Northern District of Alabama under the forum selection clause contained within the Limited Warranty. Doc. 4 at 1, 8. The District Court of New Jersey granted the motion and transferred the matter to this Court. Docs. 18–19.

## STANDARD

Summary judgment is appropriate when the facts, supported by the record and taken in the light most favorable to the nonmovant, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if the evidence would allow

a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And one is "material" if it is an element of the underlying claim that might affect the case's outcome. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The movant may discharge its burden by pointing out to the district court that there is no evidence supporting an essential element of the nonmovant's case. *Id.* at 325. The district court must view the evidence and all factual inferences in the light most favorable to the nonmovant. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmovant then must show that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the record evidence would not permit a rational trier of fact to find for the nonmovant, then there is no genuine dispute for trial. *Id.* All reasonable doubts, however, are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## DISCUSSION

Burkhardt asserts three counts against Tiffin, alleging (1) violations of the New Jersey Motor Vehicle Warranty Act (the "New Jersey Lemon Law"); (2) violations of the Magnuson-Moss Warranty Improvement Act; and (3) violations of

New Jersey's version of the Uniform Commercial Code. Doc. 1-3 at 5–10. Because her Magnuson-Moss claims and Uniform Commercial Code claims are substantially identical, the Court analyzes them together.

## I. New Jersey Motor Vehicle Warranty Act

### A. Choice of Law

Tiffin argues that the New Jersey Motor Vehicle Warranty Act is not applicable to this matter, and thus Burkhardt's claim fails as a matter of law. Doc. 54 at 13-16. As support, it claims that this law "only applies to motor vehicles purchased or leased in" New Jersey, and that, because the vehicle was purchased in Huntsville, Alabama, the statute is inapplicable. *Id.* at 14. Burkhardt counters that the District Court of New Jersey already ruled that New Jersey law applies to this action, and that because Tiffin's previous counsel "represented that New Jersey law would apply if transferred" to this Court, "[j]udicial estoppel prevents Tiffin from now arguing Alabama law controls or that the New Jersey Lemon Law is inapplicable[.]" Doc. 55 at 8.

Before the New Jersey District Court, Burkhardt argued that the forum-selection clause contained within the contract between her and Tiffin was unenforceable because permitting its application would violate public policy interests. Doc. 18 at 11. Specifically, she argued that Alabama law would prevent her from availing herself of the longer statute of limitations and more expansive

substantive law offered under New Jersey law. *Id.* The New Jersey District Court concluded that, because Tiffin's counsel had conceded the applicability of New Jersey law, it had waived its right to invoke Alabama law, and thus Burkhardt's fear was unfounded. *Id.* at 11–12.

Tiffin concedes the applicability of New Jersey law to this action generally, but nevertheless argues that it is inapplicable to the transaction at issue. Doc. 54 at 12–13. First, Tiffin contends that the New Jersey Act's "plain terms" exclude the RV from its definition of a "motor vehicle," and that any alleged defects relate only to the RV's living facilities. *Id.* at 14–15. Second, Tiffin argues that imposing the Act's requirements on a sale transacted in Alabama invites "constitutional concerns" that should be avoided. Doc. 59 at 9.

New Jersey's Lemon Law defines a "motor vehicle" as "a passenger automobile … which is purchased or leased in the State of New Jersey or which is registered by the New Jersey Motor Vehicle Commission, except the living facilities of motor homes." N.J. Stat. § 56:12-30. Burkhardt purchased the RV in Huntsville, Alabama, Doc. 53-3; Doc. 53-4, thus it is excluded from that definition unless it was "registered by the New Jersey Motor Vehicle Commission," *see* N.J. Stat. § 56:12-30. Burkhardt claims that this includes vehicles "purchased out of state, but subsequently registered in New Jersey." Doc. 55 at 9 n.1. Such a reading is reasonable, as the registration provision is separated from the geographic provision

by the disjunctive "or," thereby identifying two separate kinds of motor vehicles: passenger automobiles purchased or leased in New Jersey, and passenger automobiles purchased or leased outside of New Jersey but subsequently registered there. *Cf. Loughrin v. United States*, 573 U.S. 351, 357 (2014). Given that Burkhardt registered her RV in New Jersey, Doc. 55-2, it is a passenger automobile "registered by the New Jersey Motor Vehicle Commission" and thus a "motor vehicle" as defined by the Act, *see* N.J. Stat. § 56:12-30.

Tiffin briefly suggests in reply that this reading of the statute "would invite constitutional concerns." Doc. 59 at 9. But Tiffin never identifies what those concerns are. "The law in this Circuit requires an argument to be raised *and developed* in an initial brief, otherwise it is considered abandoned." *United States v. Holley*, 166 F.4th 139, 151 (11th Cir. 2026). Here, Tiffin's argument was not raised until its reply brief, and even then, was not developed. The Court, therefore, will not pass on it.

Thus, for purposes of this case at least, the RV falls within the scope of New Jersey's definition of a motor vehicle, and the Court proceeds to resolve the merits of the Burkhardt's claim.

**B. Written Notification**

Burkhardt asserts that Tiffin failed to provide written notification that her RV was covered by the New Jersey Motor Vehicle Warranty Act, and that this

constitutes a per se violation of the New Jersey Consumer Fraud Act, and New Jersey's Lemon Law. Doc. 1-3 at 5–6.

New Jersey Statute § 56:12-34 provides that "[a]t the time of purchase in the State of New Jersey" or "at the time of lease in the State of New Jersey," a manufacturer must provide a consumer with a written statement informing her of her rights and remedies under the act.

Burkhardt purchased her RV in Huntsville, Alabama, *see* Doc. 53-3; Doc. 53-4, and so Tiffin was not obligated to provide her with any such written statement. Accordingly, this claim fails as a matter of law.

**C. Scope**

Burkhardt alleges that, after she took possession of the vehicle on May 27, 2021, she experienced "nonconformities" which "substantially impair[ed] the use, value and/or safety of the vehicle," and that these nonconformities "violate the express written warranties" Tiffin issued to her. Doc. 1-3 at 6. She further claims that the vehicle has been subject to repair more than three times for the same nonconformity, and that it has remained uncorrected, that it has or will be out of service by reason of the nonconformities for a total of twenty or more calendar days, and that she has been and will continue to be "financially damaged" due to Tiffin's "intentional, reckless, wanton, and negligent" failure to comply with New Jersey law. *Id.* at 7.

Tiffin argues that these defects all relate to the living facilities of the RV, which the New Jersey Lemon Law specifically excludes. Doc. 54 at 15–16; *see* N.J. Stat. § 56:12-30(a)

Burkhardt counters by recounting the defects affecting her RV: water intrusion and other defects have rendered the living quarters of her RV uninhabitable, and electrical failures, generator issues affecting power for living systems, slide misalignment, entry door/stair problems, and leveling/hitch issues pose similar problems to the vehicles "usability and safety." Doc. 55 at 10. She argues that a reasonable jury "could find these manufacturing and assembly defects" substantially impair the RV under the New Jersey Lemon Law. *Id.*at 9–10.

Burkhardt's argument is flawed because it begs the question. The New Jersey Lemon Law requires the Court to ask whether an alleged defect is within the law's scope, and only afterward ask whether that defect substantially impairs use, value, or safety. New Jersey law nowhere defines what constitutes the "living facilities" of an RV. But common-sense dictates that such a category includes all aspects of the RV apart from those necessary to drive the vehicle.[1] And here, it is uncontested that "Tiffin did not manufacture" the chassis of the RV. Doc. 53-5 at 5.

[1] Florida's Lemon Law contains the same exclusion and provides a non-exhaustive list of what the category includes: "[T]hose portions designed, used, or maintained primarily as living quarters and include, but are not limited to, the flooring, plumbing system and fixtures, roof air conditioner, furnace, generator, electrical systems other than automotive circuits, the side entrance door, exterior compartments, and windows other than the windshield and driver and front passenger windows." Fla. Stat. § 681.102(14).

The kinds of defects Burkhardt alleges relate to the living facilities of the RV that Tiffin manufactured, not to the underlying motor vehicle that was manufactured by another company. *See* Doc. 55 at 9. In light of that fact and the uncontested evidence of the vehicle's operability, Doc. 53-1 at 20, the Court cannot conclude that Burkhardt has presented any evidence of a relevant defect sufficient to sustain her claim under the New Jersey Lemon Law. Consequently, Tiffin is entitled to summary judgment on this claim as a matter of law.

## II. Magnuson-Moss Warranty Improvement Act & New Jersey UCC

Burkhardt asserts claims under the Magnuson-Moss Warranty Improvement Act and the New Jersey UCC. *See* Doc. 1-3 at 8-10. The Magnuson-Moss Act provides a private right of action in § 2310(d)(1), which allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract" to sue for damages and other relief. 15 U.S.C. § 2310(d)(1). Burkhardt claims that Tiffin has failed "to comply with the express written warranties" by failing to repair her defective RV, and that this failure also constitutes breach of the implied warranties of merchantability and fitness for a particular

purpose,[2] as well as breach of contract and an "Unfair Trade Practice."[3] Doc. 1-3 at 9. Burkhardt's "Uniform Commercial Code" count involves the same conduct and the same warranties. *Id.* at 9-10.

**A. Express Warranty**

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.J. Stat. § 12A:2-313(1)(a). To bring a claim for breach of an express warranty, a plaintiff must show that the defendant made an affirmation of fact, promise, or description about the product; that the affirmation, promise, or description became part of the basis of the bargain; and that the product did not conform to it. *Topoleski v. Veshi*, No. 1820-16, 2019 WL 149721, at *6 (N.J. Super. Ct. App. Div. Jan. 8, 2019). "A manufacturer's liability for breach of an express warranty derives from, and is

---

[2] Nothing in the record or the briefing suggests that there is any basis for Burkhardt's implied warranty of fitness for a particular purpose claim. Nothing indicates that the RV was ever used, or intended to be used, for anything other than its ordinary purpose. *Cf.* N.J. Stat. § 12A:2-315. Thus, Tiffin is entitled to judgment as a matter of law on this claim.

[3] Burkhardt's complaint does not explain the "Unfair Trade Practices" upon which she would base her Magnuson-Moss Warranty Improvement Act claim, and she does not address unfair trade practices in her opposition brief. "[I]n order to state a claim under the MMWA, the Plaintiff must adequately plead a cause of action for breach of written or implied *warranties* under [state] law." *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012) (emphasis added). An unfair trade practices claim will not suffice. Thus, the Magnuson-Moss Warranty Improvement Act claim rises or falls with the underlying warranty claims.

measured by, the terms of that warranty." *Cipollone v. Liggett Grp.*, 505 U.S. 504, 525 (1992).

It is uncontested that the express warranty relevant to Burkhardt's claims is the Limited Warranty contained within the RV purchase contract. Doc. 54 at 18; Doc. 55 at 5. Under that provision, Tiffin "promises to repair or replace … any defects in materials or workmanship, to the covered portion of the motorhome which are defective at the time of purchase or become defective during normal use during the Warranty Period, at no charge to purchaser, " with such warranty covering "only the body/coach portion (and not the chassis) of those motorhomes purchased in the United States or Canada and operated in those countries." Doc. 53-5 at 4. The contract also states that the "Limited Warranty limits Tiffin's obligations to the sole remedies of repair or replacement" and that it is the "purchaser's sole and exclusive remed[y]." *Id.* at 4, 9.

Such a limitation of remedies is permitted under New Jersey law "because the parties' intent to limit remedies was 'clearly expressed.'" *Palmucci v. Brunswick Corp.*, 710 A.2d 1045, 1047 (N.J. Super. Ct. App. Div. 1998) (quoting N.J. Stat. § 12A:2-719 cmt. 2) (internal citation omitted). Thus, Burkhardt would not be entitled to recover damages under any of her theories unless this provision failed of its essential purpose. *See* N.J. Stat. § 12A:2-719(b)(2). Such a provision "fails of its essential purpose if, after numerous attempts to repair," the defects remain. *Gen.*

*Motors Acceptance Corp. v. Jankowitz*, 523 A.2d 695, 703 (N.J. Super. Ct. App. Div. 1987).

First, Burkhardt has not specifically identified evidence suggesting that defects to any warrantied portion of the RV persisted after Tiffin's 2022 repair conducted at its facility in Alabama. *See generally* Doc. 55. Although she makes general references to testimony to that effect, Doc. 55. at 6–7, 11, she cites no specific evidence, and the Court is under no obligation to find it for her, *see* FED. R. CIV. P. 56(c)(3).[4] Further, Burkhardt testified that she did not try to determine whether any electrical defects remained after the RV was returned, Doc. 53-1 at 23, and a subsequent inspection in October 2025 found sealants intact and no indications of moisture, *see* Doc. 53-9. But, regardless, to the extent that evidence of remaining defects does exist, Burkhardt has not shown that she availed herself of "numerous attempts to repair" the RV. *Gen. Motors Acceptance Corp.*, 523 A.2d at 703. Accordingly, Burkhardt has failed to substantiate her express-warranty claim, and so it fails as a matter of law.

[4] Tiffin notes that Burkhardt complained of the RV's entry stairs not being fixed after the 2022 repair. *See* Doc. 54 at 10 ¶23; Doc. 59 at 6 ¶12. But this defect first appeared on the November 2022 repair order, *see* Doc. 55-5 at 2, and Burkhardt never asked Tiffin to attempt to fix them again, *see* Doc. 58-2; Doc. 53-1 at 28, 111–12. Instead, she demanded that "Tiffin send a company representative to … pick this coach up, and bring with them a check for a refund of the original purchase price … paid for the original vehicle." Doc. 58-2 at 2. Burkhardt therefore cannot predicate her express-warranty claim on this defect, since she has not proven that it failed of its essential purpose. *See Jankowitz*, 523 A.2d at 703.

**B. Implied Warranty of Merchantability**

An implied warranty of merchantability is "a warranty that the goods shall be merchantable" and "is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind" unless such a warranty is excluded or modified. N.J. Stat. § 12A:2-314(1). Goods are merchantable if, among other things, they "are fit for the ordinary purposes for which such goods are used." *Id.* § 12A:2-314(2)(c). A claim for breach of this warranty requires a plaintiff to show, among other things, that the good was not merchantable when it was sold, and that the plaintiff suffered injury or damages caused by the defective nature of the goods. *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. 3-cv-4558, 2008 WL 4126264, at *19 (D.N.J. Sept. 2, 2008).

The parties disagree whether Burkhardt waived such a warranty. *See* Doc. 54 at 23-25; Doc. 55 at 13–14. Regardless of whether Tiffin's disclaimer was sufficient under New Jersey law, such a disclaimer is ineffective under 15 U.S.C. § 2308(a), which provides that "[n]o supplier may disclaim or modify … any implied warranty to a consumer with respect to such consumer product if … such supplier makes any written warranty[.]" An implied warranty of merchantability thus attached to the sale of the RV to Burkhardt.[5]

[5] This is so even though the RV was ultimately sold to Burkhardt through a retailer. *See Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69, 96–97 (N.J. 1960).

"Merchantability does not mean that 'the goods are exactly as the buyer expected,'" but rather that "the goods satisfy a minimum level of quality." *Sheris v. Nissan N. Am. Inc.*, No. 07-cv-2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (quoting *Ford Motor Co. v. Fairley*, 398 So.2d 216, 218 (Miss. 1981)). For an automobile, "the implied warranty of merchantability is breached only when a defect 'renders the vehicle unfit for its ordinary purpose of providing transportation for its owner.'" *Id.* And because an RV serves both as an automobile and as a kind of habitation, a defect which renders it unfit for habitation would render it unmerchantable.

Even so, the Magnuson-Moss Act provides that no action may be brought under § 2310(d) "for failure to comply with any obligation under any … implied warranty" unless the person obligated "is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e). Given what the Court has already noted about the evidence relating to the RV's condition after the 2022 repair, *supra* at 14, there does not appear to be sufficient evidence suggesting a "failure to comply" under Section 2310(d)(1), and so Burkhardt's claim under the Magnuson-Moss Act predicated upon a breach of the implied warranty of merchantability necessarily fails.

Burkhardt's state-law claim fails for a similar reason. Tiffin's agreement with Burkhardt expressly limits remedies that can be recovered for breach to "the sole

remedies of repair or replacement." Doc. 53-5 at 9. The parties agree that this is the sole remedy governing their contract. *See* Doc. 55 at 13 (arguing that the disclaimer of implied warranties is not enforceable "when the exclusive remedy (repair or replace) fails of its essential purpose"); Doc. 54 at 23–25. And the Magnuson-Moss Act contemplates that warrantors may limit the remedies available to purchasers for breach of written or implied remedies if there is a reasonable repair-or-replace remedy still available. *See* 15 U.S.C. § 2304(a); *see also id.* § 2310(d). That is what Tiffin has done here. And, as noted above, *supra* at 14 & n.4, because Burkhardt has not identified evidence suggesting that defects to any warranted portion of the RV persisted after Tiffin's 2022 repair conducted at its facility in Alabama (other than the stairs, which Burkhardt did not allow Tiffin to repair), *see generally* Doc. 55, her claim for breach of the implied warranty of merchantability fails as a matter of law.

## CONCLUSION

Because no genuine dispute of material fact remains on any count, the Court **HOLDS** that, as a matter of law, Burkhardt has failed to produce evidence sufficient to sustain any of her claims. Accordingly, the Court **GRANTS** Tiffin's Motion for Summary Judgment (Doc. 54) as to all counts.

**DONE** and **ORDERED** this 21st day of October, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE